RECEIVED
IN LAKE CHARLES, LA
FEB - 2 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SUSAN SAFI RAFIQ | : | DOCKET NO. 2:06 CV 1332 |
| VS. | : | JUDGE MINALDI |
| SMI GLOBAL MISSION SUPPORT, INC., SMI GROUP INC. AND CUBIC CORP. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is SMI Global Support Mission, Inc.'s ("SMIGSM") Motion to Dismiss [doc. 13] pursuant to Fed. R.Civ.P. 12(b)(6). SMIGSM[1] moves this court to dismiss the plaintiff's complaint for alleged violations of Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The plaintiff has filed an opposition and the defendant has filed a reply.

Rule 12(b)(6) Standard

Rule 12(b) states that "[I]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In some cases, however, a court may permit Rule 12(b)(6) consideration of "undisputedly authentic documents",

---

[1] Co-defendants SMI and CUBIC have not joined in, nor have they opposed this motion.

even though the documents were not attached to the complaint, so long as the authenticity of the documents is not challenged, the documents are attached to the motion to dismiss, and the plaintiff's claims are premised upon the documents.[2]

On a F.R.Civ.P. Rule 12(b)(6) motion, the Court must view the plaintiff's complaint in the light most favorable to the plaintiff and must accept as true all of the factual allegations in the complaint.[3] The motion will be denied if the allegations support relief on any possible theory.[4] The court will "bend over backwards to avoid granting a 12(b) motion to dismiss."[5]

"The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a)."[6] All that is required is that the petition include "a short and plain statement of the claim that gives the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests."[7]

---

[2] Federal Civil Rules Handbook 2006, Baicker-McKee, Janssen, Corr, Pt III, p. 357, citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 958 n. 13 (9th Cir. 2005); *Moses.com Secs., Inc. v. Comprhensive Software Sys, Inc.*, 406 F.3d 1052, 1063 n. 3 (8th Cir. 2005); *Jorge v. Rumsfield*, 404 F.3d 556, 559 (1st Cir. 2005); *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002); *Gryl ex rel. Shire Pharms Group PLC v. Shire Pharms Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002); *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3rd Cir. 2002).

[3] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S.Ct. 1160, 1161 (1993).

[4] *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994).

[5] *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).

[6] Wright & Miller, Federal Practice and Procedure Civil 2d, §1357 at n.11; *Leatherman*, supra at 1163.

[7] *Leatherman*, supra at 1163 (Quoting <u>Conley v. Gibson</u>, 78 S.Ct. 99, 103 (1957)).

There is no requirement that the plaintiff "set out in detail the facts upon which she bases her claim."[8] General factual allegations are sufficient and the court "will presume that general allegations embrace those specific facts that are necessary to support the claim."[9] However, conclusory allegations concerning the legal affect of the events alleged do not have to be accepted by the court.[10]

Facts

The plaintiff, Susan Safi Rafiq ("Rafiq"), was born in Afghanistan in 1962. She and her family fled from Afghanistan to Europe in 1980, after the Soviet Union invaded the country. She and her family eventually settled in Georgia and she became a U.S. citizen in 2002. (Compl. ¶ 11).

After the U.S. military campaign began in Afghanistan, Rafiq saw an opportunity to use her language skills and intimate knowledge of Afghan culture to assist in the U.S. effort. Rafiq, feeling a patriotic duty to her adopted country, decided to work as a role-player in simulations with U.S. servicemen prior to their deployment to Afghanistan. (Compl. ¶13).

SMI[11] recruited Rafiq to serve as a role-player during the training exercises at the Joint Readiness Training Center ("JRTC") located at Fort Polk, Louisiana. (Compl. ¶¶ 11, 14). The

---

[8] *Leatherman*, supra at 1163.

[9] *National Organization for Women, Inc. v. Scheidler*, 114 S.Ct. 798, 803 (1994) (quoting *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2137 (1992)).

[10] Wright & Miller, Federal Practice and Procedure: Civil 2d §1357, pp. 311-21.

[11] The plaintiff alleges that she was jointly employed by SMIGSM, SMI and CUBIC. In the complaint, the plaintiff uses "SMI" to refer to both SMI and SMIGSM. It is unclear which specific entity may be responsible for which specifics acts. In citing the facts of the case, the court has used "SMI" as incorporated in the complaint, being unable to distinguish between the acts of the separate entities.

training took place in June 2004, and lasted 21 days. (Compl. ¶¶ 5, 14). Rafiq helped recruit Afghan men and women to join her in this work. (Compl. ¶13).

On June 1, 2004, after a 14-hour trip to Louisiana on an SMI bus from Atlanta, Georgia, Rafiq and thirteen other Afghan women were housed in the Fort Polk Female Barracks ("the barracks"). (Compl. ¶¶16, 17). The plaintiff alleges that the barracks were not suitable for human habitation. (Compl. ¶ 17). They were allegedly filthy, infested with cockroaches and rodents, sweltering and dangerously hot. (Compl. ¶17). The barracks had only one minimally functioning air-conditioner and one fan.(Compl. ¶17). There were no cleaning supplies available to clean the space in which the fourteen women had to bathe and sleep for the 21 days. (Compl. ¶17).

On or about June 3, 2003, Mr. Jasim Ceric ("Ceric"), an SMI on-site manager, transported the plaintiff and other co-workers to Wal-Mart and purchased approximately a dozen fans. (Compl. ¶23). None of the new fans was provided to the women's barracks, which allegedly remained dangerously hot. (Compl. ¶23). At the urging of her female co-workers, many of whom did not speak English, Rafiq approached Ceric and requested a fan for their barracks. (Compl. ¶24). Allegedly, Ceric not only denied the plaintiff's request, but in response to her complaints about the poor housing conditions, he became angry and physically attacked her, causing severe bruising on her arm and breast. (Compl. ¶25). During this encounter, Ceric allegedly told the plaintiff to shut up and then stated that if women did not speak English, they did not deserve better. He also said that SMI did not care what happened to her, and that if she collapsed in the extreme heat, SMI would not call her to participate in the October rotation. Ceric also allegedly threatened Rafiq saying "You know what we did to women like you in Bosnia," which Rafiq construed as referring to the rape of Bosnian women by soldiers of opposing warring factions. (Compl. ¶25).

4

On the following day, after her shift, Rafiq went to the office of Pierre Rodriguez ("Rodriguez"), SMI's Deputy Program Manager, to tell him about the alleged assault and comments by Ceric. She also described the dangerously hot and uninhabitable conditions in the women's barracks. (Compl. ¶ 27). Rafiq asserts that she was crying and visibly upset when she spoke to Rodriquez. Rodriguez told her that he would relay her complaint to Young Lim ("Lim"), SMI's manager of operations at the JRTC. He suggested that she tell Lim about the incident with Ceric. (Compl. ¶28).

Two days later, on or about June 6, 2004, Rafiq, having not heard from Lim, went to his office. She met with Lim and described Ceric's "verbal and physical assault on her and the threat he made to her." (Compl. ¶ 29).

Lim allegedly acknowledged that SMI had experienced problems with Ceric's behavior in the past. He suggested that this violent behavior was not Ceric's fault, because he had been trained to be aggressive in Bosnia. In response to her complaint, Lim accused her of being a "troublemaker." He threatened Rafiq, "in a loud and intimidating voice, that the conditions in the barracks were CUBIC's fault, and that he would terminate her and her co-workers if they continued to complain." SMI failed to take any corrective action in response to Rafiq's complaint. (Compl. ¶ 30).

SMI and CUBIC failed to answer the women's request for improvement in the barracks. Rafiq and the other women were routinely out and working in the scorching heat for 14 hours a day, after which many of them would collapse from exhaustion and dehydration. (Compl. ¶ 31).

On or about June 10, 2006, Rafiq fainted from dehydration during a training exercise. (Compl. ¶ 32). Paramedics advised her to rest in a cool place. The plaintiff explained to CUBIC

employees, in the presence of Lim, that the barracks were dangerously hot. Nonetheless, the defendants did not provide Rafiq with adequate air-conditioning that evening. (Compl. ¶37). Instead, Lim reproached the plaintiff for complaining to CUBIC employees and warned her about complaining again to CUBIC or to the U.S. Army. (Compl. ¶35). Lim also said that he would send her home if he could. (Compl. ¶36).

On one of the visits to the JRTC made by SMI's Chief Executive Officer, Man Ki Kim ("Kim"), he entered the female barracks and told the women that they should not complain about their living conditions and that they should be thankful to him for giving them food and putting a roof over their heads, because people in Afghanistan did not even have that. (Compl. ¶38). He also allegedly told them that they had not been hired for their "pretty faces." (Compl. ¶38).

Soon after the plaintiff's employment ended, on or about June 28, 2004, she wrote e-mails to the U.S. Army and to CUBIC to report the conditions in the barracks, the physical attack she had suffered and the subsequent retaliation she faced. (Compl. ¶40).

On or about July 2, 2004, the plaintiff reported the verbal and physical assault by Ceric to the U.S. Military Police at Fort MacPherson, Georgia (Compl. ¶42). "Shortly thereafter" she filed a charge with the Equal Employment Opportunity Commission (Compl. ¶42).

The plaintiff received a letter dated July 2, 2004 from SMI's attorney, accusing her of making fraudulent, slanderous and libelous representations. (Compl. ¶43). SMI's attorney demanded that the plaintiff cease and desist from pursuing her discrimination complaint or face legal action by SMI. (Compl. ¶43).

Analysis

SMIGSM asserts two arguments in support of its Motion to Dismiss:

1)  The plaintiff's Title VII claim is untimely because she waited more than a year after the conclusion of her employment before filing her Charge of Discrimination with the EEOC; and

2)  The plaintiff's § 1981 claim fails because:

    a)  § 1981 bars discrimination on the basis of race and the plaintiff's allegations confirm that there were not any actions taken against her based on her race;

    b)  The plaintiff has failed to allege an adverse employment action or discriminatory animus;

    c)  The plaintiff has failed to establish a prima facie case of hostile work environment because she cannot establish that the alleged harassment was based on race, nor can she establish that the alleged harassment was so severe or pervasive that it affected the terms and conditions of her employment; and

    d)  The plaintiff has failed to allege a cause of action for retaliation under § 1981 because she has not alleged an underlying claim of discrimination based on race.

Title VII Claim

Under Title VII, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act.[12] The 300-day filing period is subject to equitable doctrines such as tolling or estoppel. However, the Supreme Court has held that such doctrines must be applied sparingly.[13]

The Fifth Circuit has recognized three possible and non-exclusive bases for tolling the time period for filing a charge: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights.[14]

---

[12]  42 U.S.C. § 2000e-5(e)(1); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998).

[13]  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

[14]  *Harrison v. Estes Express Lines* L 3455247, *2 -3 (C.A.5 (Tex.), 2006); *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir.1995).

The party who invokes equitable tolling bears the burden of demonstrating that it applies in her case.[15]

Rafiq's employment ended on June 21, 2004. (Compl. ¶¶ 5, 14 and 39). Attached to the Motion to Dismiss as Exhibit "A" is Rafiq's Charge of Discrimination dated August 29, 2005. The plaintiff has not disputed the authenticity of this document and the plaintiff's claims are premised upon the documents, therefore the court can consider this document even though this is a 12(b)(6) and not a Rule 56 motion. Rafiq does not dispute that this notarized Charge of Discrimination was not filed until at least August, 29, 2005, the date it was notarized. This is undisputedly more than a year after Rafiq's employment ended.

In her complaint, however, Rafiq states that she filed her charge with the EEOC "shortly after July 2, 2004." (Compl. ¶ 42). The plaintiff argues that the law requires only that the charge be initiated, not verified, during the limitations period. Under EEOC regulations, 29 C.F.R. § 1601.2, a charge that was initiated within the limitations period may be amended or verified (*i.e.*, signed and notarized) after the filing deadline, even if the original charge was not verified.[16] Rafiq argues that

---

[15] *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir.1992)

[16] A timely filed intake questionnaire either constitutes an official charge or tolls the 300-day limitations period. *Deily v. Waste Management of Allentown*, 118 F.Supp.2d 539, 543 (E.D.Pa.,2000); *See Ricciardi v. Consolidated Rail Corp.*, 2000 WL 1456736 at 2 (E.D.Pa. Sept. 29, 2000) (filing of intake questionnaire tolls 300-day limitations period); *Bullock v. Balis & Co., Inc.*, 1999 WL 527792 at 2 (E.D.Pa. July 22, 1999) (intake questionnaire constitutes official charge for statutory filing purposes) (citing *Peterson v. City of Wichita*, 888 F.2d 1307, 1309 (10th Cir.), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Casavantes v. California State Univ.*, 732 F.2d 1441, 1443 (9th Cir.1984); *Price v. Southwestern Bell Tel.*, 687 F.2d 74, 78 (5th Cir.1982)); *but see Gulezian v. Drexel Univ.*, 1999 WL 153720 at 3 (E.D.Pa. Mar. 19, 1999) (intake questionnaire insufficient where EEOC advises grievant that more information is necessary).

the motion to dismiss be denied on this ground because she alleges in the complaint that her charge was filed shortly after July 2004. (Compl. ¶ 42). SMIGSM argues that if Rafiq has documents demonstrating that she made prior written submissions to the EEOC that are sufficient to constitute a charge, she should be required to allege those facts in an Amended Complaint so that the court can address the legal sufficiency of those contentions.

The plaintiff has made allegations which could support relief on a "relating back" theory.[17] The court notes that the inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a). All that is required is that the petition include a short and plain statement of the claim that gives the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. The plaintiff's allegation that she filed a claim with the EEOC shortly after July 2004 is sufficient to meet this test. The motion to dismiss the Title VII claim on timeliness will be denied.

§ 1981 Claim

42 U.S.C. § 1981 forbids all race discrimination in the making of private contracts.[18]

In *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), the U.S. Supreme Court held that a person of Arab ancestry may be protected from racial discrimination under § 1981. Rafiq alleges that:

> SMI subjected the plaintiff to unwelcome and offensive intimidation, ridicule and insult by, *inter alia*, subjecting her to dangerous and humiliating living conditions; subjecting her to taunts, insults and harassment specifically because she is Afghan.

---

[17] While this court finds that a "relating back" is theoretically possible, the court does not find that the plaintiff's filing relates back. This determination will be made upon the submission of evidence at a later date.

[18] *See Runyon v. McCrary*, 427 U.S. 160, 168 (1976).

9

(Compl. ¶ 50).

SMI did not subject similarly situated persons of non-Afghan descent to similar intimidation, threats, humiliation, abuse and dangerously hot living conditions, or retaliation. (Compl. ¶ 52).

These allegations of race discrimination are sufficient to survive a motion to dismiss on the § 1981 claim.

§1981 covers race-based claims only and does not embrace claims of gender discrimination. Accordingly, any claims of gender discrimination, sexual harassment or retaliation under § 1981 are not viable. The motion to dismiss will be granted as to these claims.

Adverse Employment Action

Under Title VII an employee who claims discrimination on the basis of race, color, sex, or national origin must show that she suffered some type of adverse employment action.[19] Title VII's requirements that the employer's practice relate to "compensation, terms, conditions, or privileges of employment" or that the practice "deprive[s] any individual of employment opportunities or otherwise adversely affect[s] his status as an employee."[20]

In this case, Rafiq was not terminated, demoted or denied a promotion. She completed her term of employment. SMIGSM asserts that the plaintiff has alleged no adverse employment action.

---

[19] See, e.g., Clearwater v. Indep. Sch. Dist. # 166, 231 F.3d 1122, 1127 (8th Cir.2000) (race); Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1125 (9th Cir.2000) (national origin); Boone v. Goldin, 178 F.3d 253, 256 (4th Cir.1999) (sex). Likewise, an employee who claims discrimination under §1981 must also allege an adverse employment action. Mayberry v. Mundy Contract Maintenance Inc., 2006 WL 2505308, *2 (C.A.5 (Tex.), 2006).

[20] § 2000e-2(a)(1) & (2); Ali v. Alamo Rent-A-Car, Inc., 8 Fed.Appx. 156, 157-158, 2001 WL 218788,**1 (C.A.4 (Va.), 2001).

10

In *Burlington Northern and Santa Fe Railway Co. v. White*,[21] the Supreme Court rejected the approach taken by several circuits, including the Fifth Circuit, that required plaintiffs to demonstrate an "ultimate employment decision" to satisfy the "adverse employment action" element of a retaliation claim.[22] Instead, the Court clarified that the plaintiff must demonstrate that the actions were the sort that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."[23] These actions may include those that take place outside of the workplace.[24]

Rafiq alleges that the defendants failed to provide sanitary and habitable living quarters. She alleges that after working 14 hours a day, she had no choice but to return to dangerously hot and filthy housing facilities. These conditions allegedly resulted in the plaintiff collapsing from heat exhaustion and dehydration. She alleges that she was threatened with termination and subjected to allusions to rape. These allegations are sufficient to defeat a motion to dismiss on the Title VII and §1981 claims that require adverse employment actions.

Racially Hostile Work Environment

To prevail on a title VII hostile work environment claim, a plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment

---

[21] --- U.S. ----, 126 S.Ct. 2405 (June 22, 2006)

[22] *Id.* at 2414-15.

[23] *Id.* at 2415 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C.Cir.2006)) (internal quotation marks omitted).

[24] *Id.* at 2414; *see also McCullough v. Kirkum*, 2006 WL 3786043, *3 (C.A.5 (La.), 2006).

of which she complained was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.[25] "For harassment on the basis of race to affect a term, condition, or privilege of employment ⋯ it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "[26] In determining whether a workplace constitutes a hostile work environment, the court must consider the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[27]

The plaintiff alleges that she was subjected to unwelcome and offensive intimidation, ridicule and insult by, *inter alia*, dangerous and humiliating living conditions and taunts, insults and harassment specifically because she is Afghan. (Compl. ¶ 50). She alleges that Ceric grabbed her, causing bodily injury. These allegations are sufficient gives the defendants fair notice of the plaintiff's claim and the grounds upon which it rests.

Accordingly, the defendant's Motion to Dismiss will be granted in part and denied in part. The motion to dismiss will be denied with the exception of claims of discrimination on the basis of

---

[25] *Equal Employment Opportunity Commission v. Nexion Health At Broadway, Inc.* 2006 WL 2528432, *1 (C.A.5 (Tex.),2006)

[26] *Ramsey*, 286 F.3d at 268 (internal quotations omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

[27] *Id.* (internal quotations omitted) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000); *Allen v. Potter*, 152 Fed.Appx. 379, 382, 2005 WL 2769530, **2 (C.A.5 (La.), 2005).

gender discrimination, sexual harassment or retaliation under § 1981.

Lake Charles, Louisiana, this ___2___ day of February, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE